Good morning, Your Honors. May it please the Court. Raj Kandesha on behalf of Appellant Ana Biani. I would like to reserve four minutes of my time for rebuttal. All right. The total time is displayed, and I'll try to remind you, but keep your eye on the clock as well. Thank you, Your Honor. Your Honor, the reversal of the District Court's dismissal order here is warranted for three interrelated reasons. First, most significantly, the District Court applied the wrong test for the element of  In order to assess whether or not the complaint here pled, plausibly pled, a claim that the appellees copied Appellant's protected works, the Court excluded from the analysis unprotectable elements, despite the teachings of this Court in Rentmeester and— Even if they haven't included them, don't you still lose? Your Honor, we disagree. We believe that. Once you consider all of the elements, both protected and unprotected, the similarities between Appellant's works and the characters on the show are numerous, they're striking, and frankly, they plausibly cut against any notion here that appellees' characters were independently created. And recall that we're at the 12B6 stage at this point, Your Honor. So, the first error— Well, hold on. Now, I understand that the main characters, they dressed in the corsets, they dressed in the characteristically Victorian dress, but really, aside from that, there were very few similarities. Here, we were talking about Charlotte and Vanessa. While they were both sort of sexually provocative, Charlotte was drawn to young boys and girls, while Vanessa did not show any interest in young boys and girls. They both are witches. That's the end of the similarities, because Charlotte used herbs to make potions and sometimes kill people. In contrast, Vanessa has supernatural abilities. Charlotte is described as an assassin and believes killing people to cleanse the earth, whereas Vanessa does not frequently kill people. I mean, that seems to be quite different. Sir, Your Honor, I think what you're pointing to are differences that appellees have pointed to. We do not disagree that there are differences between the characters. I think if you look at the teachings in Rentmeester, Skidmore, Hanagami, and other cases that have followed Rentmeester, it's clear that for purposes of assessing the probative similarities, similarities that are probative of copying, this Court has said those similarities need not be extensive. They need only be such that they are likely to have arisen had the works been created independently. Now, in the litany of similarities, Your Honor, I think one has to also consider the fact not only are Charlotte and Vanessa witches and herbalists, they both also had fraught relationships with the church. That's clear. Those are important characteristics of both characters. Looking at the similarities between Frederick and Vanessa, both characters experience episodes of grand mal seizures that lead others around them to believe they're possessed by evil spirits. In fact, this is one of the most distinctive characteristics of Vanessa. We see that on Episode 2 of Season 1. It really announces who Vanessa is to the world. That is critical. I didn't watch the episodes, Counselor. Understood. Let me, that argument, the grand malaise and all that, leads me back to your original point, which is whether the District Court applied the proper test in the first place. Because I think we can, given the fulsomeness of the characters developed by your client, as well as by now many episodes in the show, I think we can always dig down and find some similarity and some differences. So I'm not convinced that some filtering of unprotected elements isn't appropriate for purposes of showing striking similarity. I'm not convinced of that, and I want to hear your argument again on that. Because isn't the whole point of analyzing striking similarity is to figure out whether the works are independently created? And in doing that, some of the stuck characteristics necessarily has to be filtered out, don't they? Well, I think there are two responses to that, Your Honor. The first is, I think, to recall what the inquiry is here on copying. And I think if you look at Professor Nimmer, he makes a cogent point, which is, really, the inquiry of probative similarity is an evidentiary one. Is there sufficient evidence here to support an inference at the particular posture we're at, we're at 12B6 right now? Is there sufficient evidence in what's pled in terms of similarities to support an inference that it seems likely, plausibly likely here, that the appellees or the defendant copied the plaintiff's works? If one were to start to excise at this stage and snip away things that are deemed unprotected, there are two problems. One is, as Professor Nimmer points out, you can always reduce protected elements of a work to fundamentally unprotectable, right? Words themselves are not protectable. It's the combination of words in a distinctive sequence that can give rise to protection. So there's a danger in that by excising, by analyzing, you're going to miss the evidentiary moments where you actually have before you evidence that would support an inference of  The second issue is that we are here on 12B6, where there's been no expert discovery, frankly, no discovery at all. Now, in some cases where you're dealing with, for example, two patterns of lace, it may be easy for the court to simply look at the two works and say, okay, this is either strikingly similar or not. When we're dealing with these particular works, though, we get into very complicated questions as to what exactly is inherent to the genre. We're dealing with Victorian era crime genres, but we're also dealing with works, Penny Dreadful on the one hand, My Client's Works, that expressly draw from public elements, publicly available elements, and so forth, but then build upon those. Right, you raise a fair point, and I think at the striking similarity stage, that analysis can involve an overlap of protected and unprotected elements, so I'm not suggesting that we exclude it altogether. And we've said that in Skidmore and in other cases as well, but in talking about striking similarity, pale, beautiful brunette dress in Victorian era, for example, if anyone has any passing familiarity with literature, for example, you would have to necessarily filter that out, whether you're calling, you're not filtering out all of the protected elements, but you necessarily wouldn't consider that, because that's so common that I don't know how it's probative of copying. I understood, Your Honor, and I would agree with that. I would say if we were here today and that was the only similarity, and we were arguing that this was striking, I think we would have issues. Our point is that that is simply not the only similarity. One has to look at the combination of elements together in a palette's work, and then compare those to that which is similar in the accused infringing work here. Most importantly, the district court doesn't mention at all in its opinion and order the common use of the likeness of Eva Green to depict both characters. That's prototypically not a protected element of our client's work. However, we would argue that it is extremely probative of copying. It strongly supports an inference that those associated with the show, the Showtime series, had access, viewed my client's works, considered this association of this actress, and thought this is a compelling character. Now, of course, we're at 12B6. Fact discovery remains to be completed to assess whether or not that is, in fact, what happened. But I think the danger of filtering the way the district court did is to disregard these points of... Well, in this case, what would fact discovery add to the analysis, right? So you could look at all of the differences that Judge Mendoza points out and more, and then you can look at all of the similarities that you briefed and was argued below as well. And is it then a de novo review on our part as to whether striking similarities has been shown? Well, Your Honor, I think, yes, a de novo review is available. I think there's also the option to remand for the proceedings before the district court with an appropriate characterization of what the standard is to guide the district court's evaluation here of what is pled to the works. But it has to raise to the level of virtually impossible that the two works could have been come up with independently. That's a high bar, counsel. It's a high bar, Your Honor, correct. However, I would like to remind the court that we're here on 12B6. And the issue, I think, is appropriately framed as, is it the case that no reasonable juror could find that the two works were not independently created? That's the standard that should apply. It's absolutely the standard at summary judgment. Should not be a lower standard on 12B6. It's not the standard the court applied. The court simply made findings based on the record before her and made findings as to what was stock in the genre, what characteristics were not protected. And I would add, that's after having found my client's characters to be protectable under the DC Comics case. So at a minimum, the court had already made findings that there were protected elements, but disregarded those when it came to analyzing striking similarity. That inconsistency, I would submit, is because of a failure to apply the appropriate test. In analyzing that question, the striking similarity, is it appropriate for you to argue, and this is one of the arguments you make, is that the Showtime series uses one character and takes multiple attributes from different characters that your client created? That doesn't seem fair to me. Well, Your Honor, I think it's encompassed by my client's right to control the creation of derivative works. We would characterize Vanessa Ives as essentially a derivative, a compilation. Of several characters. And are there, okay, two characters. Are there other cases where courts have done it that way? Where they've found infringement or substantial similarity, wherever you are in the test, based on compiling various attributes from different copyrightable characters? I'm not aware of any, Your Honor, but I'm not aware of any rule that would prohibit a theory of infringement on that basis. And you can imagine the bad policy that would, or the bad implications that would result. I can infringe by taking two original protected characters and just combining them, getting around the ability. Well, I guess if you're in the striking similarity category of the analysis to Judge Mendoza's point, because you don't have any allegations of access, it seems to me you've got to show that there's really no way this could have been created absent access to your client's work. And if it's strewn across multiple characters, to me it seems less likely. Understood, Your Honor. And I think that's part of the factual inquiry, and I don't disagree with that. I think here we're talking about Vanessa Ives being a compilation of two characters, multiple other points of contact between Appellant's works and Showtime. For example, the common use of the character of an explorer who was looking for a long-lost family member. Now, that's not, you could say, well, that's an idea, it's not protected, understood. But it is also indicia, it's evidence of striking similarity that supports an inference of copying. So I would say you have to consider all of these facts together, take an holistic view, as Professor Nimmer says, and evaluate those facts, and that's what the Court did not do here. Our questions aid into your aspirational time, but that's fine. You wanted to say four minutes, we'll put four minutes on the clock on rebuttal. Thank you. Good morning, may it please the Court, my name is David Halberstadter, and I'm appearing on behalf of the Appellees. The District Court applied the correct test in concluding that the two characters from the television series Penny Dreadful were not strikingly similar, as a matter of law, to three characters created by Appellant, and that Appellant, therefore, was not excused from plausibly pleading Appellee's access to her works. There's clear Ninth Circuit precedent that establishes that in assessing striking similarity, courts are to apply the extrinsic test which requires the filtering out of unprotected elements. The District Court filtered out unprotected elements of Appellant's characters, based largely on the description of the Murder and Roses forum itself, which was included in the complaint. And the District Court concluded that even if there were some remaining protectable elements, they were not striking enough as a matter of law, such that any similarities would preclude the possibility of independent creation. Simply put, striking similarity is a very high bar used in rare cases, and Appellant's characters did not come close to reaching it. I think, admittedly, our case law is a bit muddled in this area. We did say in Skidmore that in analyzing striking similarity, there could be an overlap between protectable and unprotectable elements. So in that sense, I wonder whether the court's approach was a little bit too rigid. So let me say this about Skidmore. In my view, Skidmore is entirely an apposite. It was a review of a jury verdict on appeal. There was no issue about access in that case. One of the appellees in that case, Jimmy Page, had admitted in deposition that he owned the album containing the allegedly infringed song. There was also no consideration in that case of whether similarities between Appellant's work and Appellee's song, Stairway to Heaven, were striking. Striking similarity simply was not an issue in that case. So any discussion about the standards for striking similarity, respectfully, was dictum. It is true that the court said in one line in its general discussion about the test for copyright infringement that a plaintiff can attempt to prove the element of copying circumstantially by showing that the defendant had access to the plaintiff's works and that the two works share element similarities probative of copying. And then it went on to say this type of probative or striking similarity shows that the similarity between the two works are due to copying rather than coincidence, et cetera. That one throwaway line, I have no idea. I've read that case. Hold on. And maybe based on overlap of unprotected as well as protected elements. That's the completion of that line, which is an important piece that you left out. No, it is. And I had it here. I just hadn't gotten to it yet. Okay. Well, I wanted you to get to it because that's what we're talking about here. Yes. And it cites the Rentmeester. But to your point, neither Rentmeester or Skidmore really involved the question of access or at least access was not an issue in the case. But just going back to setting aside these cases, going back to sort of first principles and looking at striking similarity. Tell me why we can't consider at least some unprotected elements? Well, first, and I will get to that answer. There are two cases in the Ninth Circuit that deal with striking similarity head on. Unicolors versus Urban Outfitters and Malibu Textiles. In both of those cases, striking similarity was raised and was addressed. And in those cases, the court said both times quite clearly that substantial similarity and striking similarity are evaluated under the extrinsic test. And that... I did say setting aside the case law. Oh, I'm sorry. I didn't get it. Okay. And the other part of what Judge Wen said is that our case law seems to conflate the issues sometimes. So the answer to the question that you asked is that if one considers unprotectable elements in assessing striking similarity, you could end up with anomalous results because you can't consider unprotectable elements when considering substantial similarity, which is a lower bar and a lower test. So theoretically, you could end up in a situation where a court would find two works to be strikingly similar, but not substantially similar. Moreover, if one were to consider unprotectable elements... Let me take that back. The standard for striking similarity as enunciated, at least in all of the cases without putting aside what one considers, is that it would be virtually impossible that the two works were created independently. But if the similarities include unprotectable elements like ideas, historical facts, stock scenes, sins affair, that any creator can use, how could it be said that there was virtually no possibility of independent creation? For those reasons, I do not believe that a court can consider unprotected elements in evaluating striking similarity as the alternative to access plus probative similarity. Clearly, if one is evaluating probative similarity, the court is entitled to consider protectable and unprotectable. But once you move off of access and probative similarity into the zone of striking similarity, one has to apply the extrinsic test, filter out unprotectable elements, and look at the to determine whether, looking at the protectable expression, is it conceivable, is it virtually impossible that the second work could have been created independently? And that brings us very close to the question of unlawful appropriation. It does. Agreed. And I think, frankly, I think, again, the Ninth Circuit is not completely clear on that, but I think that if one were to determine that two works were strikingly similar based on unprotected elements, you've kind of already gotten to unlawful appropriation. But that's why it's a high bar and used only in rare cases. Now I don't think that there is any possibility that this court could compare the characters from appellants' submissions to the online forum and the defendant's work and find that they preclude the possibility of independent creation. For one thing, and Your Honor alluded to it, in order to make her case with respect to one of her characters, she had to, with respect to one of the appellee's characters, the appellant had to borrow from three different characters to mix and match to put those similarities together to say that the Victoria character was similar to Charlotte and to Landon Lloyd and to Clarence Fitz, I forget what the last part of his name is. The mixing and matching of three different characters into one of the appellee's characters would suggest to me a fortiori that no character is strikingly similar to the other that would preclude independent creation. What's your response to your colleague's argument that it's inappropriate to do this kind of analysis at the 12B6 stage, that this is more appropriate at summary judgment or to leave to a jury? Frankly, I think this is exactly what a vast majority of Ninth Circuit opinions has done. There are, recognize that there are two more recent cases in which panels of this court have said, well, maybe we shouldn't be deciding these types of issues, including substantial similarity, on motions to dismiss. But those are not the predominant view and not the predominant practice in this court. There are many, many claims of substantial similarity, not so many in the striking similarity area, but if you can do it for substantial similarity, you ought to be able to do it for striking similarity. There are many, many claims that have been decided on motions to dismiss and affirmed by this court both before and after the Alfred and Zendel decisions, which discouraged the granting of motions to dismiss on similarity issues. I can provide you a list of them, but for the best list, this court, actually not this court, yeah, this court, in an unpublished decision, Masterson v. Walt Disney Company, 821 Federal Appendix 779, that's a 2020 case, listed in a footnote about 12 decisions by the Ninth Circuit affirming motions to dismiss on similarity issues. So I do not think it is inappropriate in the right case. There are certainly some cases where discovery and or expert testimony would be highly informative and tend to make it more appropriate to consider the issue on summary judgment, but not this one. This one and this one, the court has all of the Appellee's, all of the Appellant's works. They've got the entire first series, first season of Appellee's television series, and it can see on de novo review that these works, these characters are just not strikingly similar such that it precludes the possibility of independent creation. Well, we have actually dealt with many of these cases on a 12B6 stage and have analyzed independently, but some panels have suggested that perhaps in the appropriate case, an expert may be helpful. Can you address that issue with regard to this case? So they get all the inferences in their favor at this point, even though we've got all of the facts, the movies and the allegations, the complaint, but is there, I mean, maybe perhaps counsel can address this, an area in which an expert may be useful. I don't believe that an expert would be necessary in this case because I think that, as Your Honor recognized, anybody who has even a passing familiarity with Victorian-era London and Jack the Ripper and Dr. Frankenstein and all of those, and all of that canon, knows and is aware of what things are generic to Victorian-era, literally, penny dreadfuls. Those are the historic, cheap, salacious stories that were printed up in that period. I think, I don't, so I don't think... Right, but the fact that the same actress was identified, that sort of jumps out at me. Excuse me? The same actress being selected, I think, is something that really... Right, so the selection of cast members is not... It's unusual, right? There are many, many actresses. It is, but this act, as it happens, this actress who is English has a history of this type of character, so it's not surprising that they picked the same actress. However, putting that aside, the selection of actress itself is not copyrightable. That's something that might have gone to access, but the appellant didn't have any evidence that, or didn't even make plausible allegations that anyone associated with the creation of the Penny Dreadful series had actually had an opportunity to view any of her submissions to this private online forum. So while I recognize that the actress is a notable, you know, eyebrow-raising thing, from a copyright standpoint, it is utterly irrelevant. I want to address some of the similarities. I don't have a huge amount of time, and I would love to be able to go through all of the differences, the significant differences between the characters, but they are all addressed in the answering brief, and I think that the case law is clear that when two characters or two works have significant differences, it precludes striking similarity as a matter of law, and I think that's where we are in this case. These characters, you know, to pick a perfect example, the male character in Penny Dreadful was an African explorer. The appellant's cite to one of their characters, who was not an African explorer, he'd been to a variety of countries, you know, and it's those kinds of, like, mischaracterizations, you know, narrowly saying both traveled and explored Africa. But one explored Africa exclusively and repeatedly, and the other traveled the world. One was American, one was British, one was middle-aged, one was young, you know, and so just looking at all of the difference between those, these characters do not meet the high bar for striking similarity. I do want to address one other issue that I think, I'm guessing this Court has gotten past, but I want to raise it for what it's worth. I don't believe that the appellant is entitled to raise this issue at all on appeal, and if this Court has already made the, reached the conclusion that it has, that it is properly before this Court, I won't say another word about it. But this issue was not raised at the district court level. Appellant in her reply brief cited to Western Watersheds for the proposition that an issue isn't waived if it was raised sufficiently before the trial court to rule on it, and she cites Ahantian v. Xenon Pictures for the proposition that an issue also isn't waived if the district court addresses the merits of the issue, whether it was explicitly raised or not. The issue concerning the proper test for striking similarity, specifically whether a court should consider or filter out unprotectable elements from the analysis, was not raised at all in the district court. The appellant did not offer any argument in opposition to the motion to dismiss about how the district court was supposed to evaluate striking similarity. She only argued that she adequately pled it. And the district court did not actually expressly address the merits of this issue on appeal either. Nevertheless, if the panel considers the district court's decisions sufficient to preserve the issue for appeal, I won't belabor the point, and I'm out of time anyway. Thank you very much for your attention. Thank you, counsel. Thank you, your honors. Just briefly on the standard and cases at the 12B6 stage, it certainly is true this court has affirmed 12B6 dismissals of copyright infringement claims based on a finding of no or a lack of substantial similarity. But I think the more recent decisions, certainly post-Rentmeester, have indicated that it is generally disfavored for copyright claims to be dismissed for lack of substantial similarity at the pleading stage. That's the panel in Hanagami, which I believe is a 2023 opinion. There's been reference to Zendale, Alfred v. Walt Disney and Co. recognizing... Some panels have suggested that, I told counsel, although it's so fact-specific, so fact-dependent. That's right, your honor. And I think the Rentmeester case actually gives us a good way to try to sort of thread the needle, as it were. In Rentmeester, the principle emerges that affirmance of a dismissal at the 12B6 stage is appropriate only when there's nothing disclosed during discovery or that could be disclosed during discovery that could change the court's conclusion that the works are not substantially similar. That seemed to be the way the Rentmeester court addressed it. To me, that seems to be the right way to approach it. And I think it lines the cases up well. I think it squares the... So what would that be here? So here, this goes back to the question that the panel has asked my learned colleague, which is really, what's the role of expert discovery here? I think he gave a very light touch to it, saying anyone who's familiar with Victorian era fiction can see right away here what is protected and what is not protected. I think that's a problematic position, precisely for the reasons I gave earlier, which is that here you have a television show, Penny Dreadfuls, which expressly goes back to celebrate a genre that is all about a canon and combining, bringing together characters like Oscar Wilde with Dr. Frankenstein, who don't exist together in the same works and often would not be thought of as together. Putting these characters together along with original characters raises very complicated and nuanced questions as to, well, what is inherent to the genre about the show? What is original? Now, my client produced her works on a message board, as your honors know from the briefing, called Murders and Roses, which similarly combined canonical characters like Oscar Wilde and Victor Frankenstein, but allowed users like my client to develop their own original characters to interact with those canonical characters. Once again, you have two very similarly almost self-reflexive types of works that are celebrating the genre, but also trying to advance on it by building on those building blocks. I think an expert here who is able to say, these characteristics of this character are inherent to the genre, C-E-G, citations, whereas these characteristics are new and original is really fundamental. That is, it's critical to guide the trier of fact here in assessing what is similar between the works and whether or not they're protectable. Now, the notion that there's something illogical about the idea that you can find two works to be strikingly similar based on unprotected elements and yet find no unlawful appropriation, that's not illogical or odd at all. They're two conceptually distinct inquiries and they reflect the proposition that not all copying is copyright infringement. One has to do two things in evaluating a copyright infringement claim. First, you have to assess whether there was copying. That's the access striking similarity inquiry. It's been a second step to assess whether or not the copying, if there is copying, amounts to copyright infringement. That's where the extrinsic test comes into play. I would submit that that requires the kind of expert support, particularly in a case like this where you have these nuanced combinations of that which is in the public domain and that which is not. To me, it's much more like music where you're taking known public domain elements and combining them in ways that can be new, original, and expressive. I see that I'm out of time. Thank you. Thank you, counsel, on both sides for your argument in this interesting case. The matter is submitted and we'll issue a decision in due course. That concludes our argument calendar for today. So we are in recess until tomorrow morning. All rise. This court for this session stands adjourned.
judges: NGUYEN, MENDOZA, KERNODLE